UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-21817-CIV-MORENO/O'SULLIVAN

ELDER LEOPOLDO GARCIA ROBLES,
JAIRO OVIDIO GARCIA ROBLES,
FREDY OTONIEL VALLADARES LOPEZ
a/k/a ALEXANDRO BARRIOS,

        Plaintiffs,

vs.

ACEBO ROOFING CORP.,
PEDRO L. ACEBO,
OCTAVIO E ACEBO,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

THIS MATTER is before the Court on the Defendants' Memorandum of Law Supporting their Motion for Summary Judgment (DE # 29, 12/6/16). This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b) for a report and recommendation. Having reviewed the applicable filings and the law, the undersigned respectfully RECOMMENDS that the Defendants' Memorandum of Law Supporting their Motion for Summary Judgment (DE # 29, 12/6/16) be **DENIED** for the reasons stated herein.

## BACKGROUND

On May 20, 2016, the plaintiffs filed a Complaint under 29 U.S.C. §§ 201-216 for Overtime Wage Violations against the defendants. *See* Complaint under 29 U.S.C. 201-216 Overtime Wage Violations (DE# 1, 5/20/16). The Complaint alleged one cause of action against the defendants: federal overtime wage violation (Count I).

On December 6, 2016, the defendants moved for summary judgment in their favor on the plaintiffs' Fair Labor Standards Act ("FLSA") claims.  (DE# 29, 12/6/16). The plaintiffs filed their response and a statement of material facts in opposition to the defendants' motion on December 20, 2016 (DE # 37, 12/20/16 and DE # 38, 12/20/16). The defendants filed their reply on December 29, 2016.  (DE# 42, 12/29/16).  This matter is ripe for adjudication.

## FACTS

The defendants, Pedro L. Acebo and Octavio E. Acebo, are brothers who own and operate the defendant, Acebo Roofing, a roofing company located in Miami-Dade County, Florida. *See* Defendants' Summary Judgment Statement of Facts (DE # 28 at ¶ 1, 12/6/16).  The plaintiffs, Elder Leopoldo Garcia Robles, Jairo Ovidio Garcia Robles, and Fredy Otoniel Valladares Lopez a/k/a Alexandro Barrios, were paid a day rate, on a weekly basis, but were paid partially by a company check that reflected some hours at a rate of $20.00 per hour and partially by a check made out to cash.  *Id.* at ¶¶ 2, 3, *see also*, Plaintiffs' Statement of Material Facts in Opposition to [DE 28] (DE # 38 at ¶¶ 2, 3, 12/20/16).  If the plaintiffs did not work, the plaintiffs did not get paid.  *See* DE # 28 at ¶ 5, *see also*, DE # 38 at ¶ 5.  The plaintiffs, Elder Leopoldo Garcia Robles, and Jairo Ovidio Garcia Robles, are brothers.  *See* DE # 28 at ¶ 6, *see also* DE # 28 at ¶ 6.

Jairo Ovidio Garcia Robles worked for the defendants from on or about July 10, 2002, through on or about December 2006, from on or about January 2008 through on or about December 2009, and from on or about January 2012 through on or about May 2016.  *See* Affidavit of Jairo Ovidio Garcia Robles (DE # 38-4 at ¶19).   Elder Leopoldo

Garcia Robles began working for the defendants on or about May 1, 2014, until approximately May 6, 2016.  *See* Interrogatory responses (DE # 38-6 p. 6), *see also* Complaint (DE # 1, 5/20/16) at ¶17.   Fredy Otoniel Valladares Lopez a/k/a Alexandro Barrios began working for the defendants on or about February 15, 2006 until approximately May 6, 2016.    *See* Interrogatory Responses (DE # 38-6 p. 11), *see also*,  Complaint (DE # 1, 5/20/16) at ¶19.

The plaintiffs are seeking overtime compensation for all hours they worked above 40 hours a week.  *See* Complaint (DE # 1, 5/20/16).

The defendants claim they "kept written records identifying the days that each Plaintiff (and their other workers) worked during the past three years, as well as the day rate payable to each Plaintiff."  (DE # 28 at ¶ 4, 12/6/16).  The plaintiffs indicate, however, that, during the subject time period, they were not required by the defendants to sign in or out of work, nor were they required to maintain any record of the hours which they did actually work.  Moreover, the plaintiffs assert that they were not required to report to a supervisor regarding the days and hours that they worked.  The plaintiffs also indicate that they never saw records of the defendants identifying the days they worked nor the rate of pay, until the filing of this lawsuit.  In addition, the plaintiffs claim they never signed off on any records identifying days and hours worked nor the rate payable to them.  Affidavit of Elder Leopoldo Garcia Robles at ¶7, Affidavit of Jairo Ovidio Garcia Robles at ¶7, and Affidavit of Fredy Otoniel Valladares Lopez a/k/a Alexandro Barrios at ¶7.

On some occasions, while the plaintiffs were working for the defendants, the

defendants paid for and provided lunches to the plaintiffs.  *See*, Declaration of Octavio

Acebo at para. 30, *see also* Jairo Robles deposition, p. 84 lines 2-13, *see also*, Fredy

Otoniel Valladares Lopez a/k/a Alexandro Barrios deposition, p. 62, lines 10-11 and 17-

20.

## STANDARD OF REVIEW

The Court, in reviewing a motion for summary judgment, is guided by the

standard set forth in Federal Rule of Civil Procedure 56(a), which states, in relevant

part, as follows:

> A party may move for summary judgment, identifying each claim or
> defense – or the part of each claim or defense – on which summary
> judgment is sought. The court shall grant summary judgment if the movant
> shows that there is no genuine dispute as to any material fact and the
> movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).

The moving party bears the burden of meeting this exacting standard. *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S.

144, 157 (1970). That is, "[t]he moving party bears the initial responsibility of informing

the . . . court of the basis for its motion, and identifying those portions of the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, which it believes demonstrate the absence of a genuine issue of

material fact." *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th

Cir. 1991) (quoting *Celotex*, 477 U.S. at 323) (internal quotation marks omitted).

In assessing whether the moving party has satisfied this burden, the Court is

required to view the evidence and all factual inferences arising therefrom in the light

4

most favorable to the non-moving party. *Batey v. Stone*, 24 F.3d 1330, 1333 (11th Cir. 1994). "When evaluating cross-motions for summary judgment, the Court analyzes each individual motion on its own merits and thus views the facts on each motion in the light most favorable to the respective nonmovant." *Adega v. State Farm Fire & Cas. Ins. Co.*, No 07-20696, 2009 WL 3387689, at *3 (S.D. Fla. Oct. 16, 2009). Summary judgment is appropriate when there is no dispute as to any material fact and only questions of law remain. *Reich v. John Alden Life Ins. Co.*, 126 F.3d 1 (1st Cir. 1997). If the record presents factual issues, the Court must deny the motion and proceed to trial. *Adickes*, 398 U.S. at 157; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Despite these presumptions in favor of the non-movant, the Court must be mindful of the purpose of Rule 56 which is to eliminate the needless delay and expense to the parties and to the Court caused by an unnecessary trial. *Celotex*, 477 U.S. at 322-323. Consequently, the non-moving party cannot merely rest upon his or her bare assertions, conclusory allegations, surmises or conjectures.  *Id.*  As the Supreme Court noted in *Celotex*:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against the party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which the party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Id.* at 322-323. Thus, the mere existence of a scintilla of evidence in support of the non-moving party's position is insufficient. There must be evidence on which the jury could

reasonably find for the non-movant. *Anderson*, 477 U.S. at 251; *Matsuchita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

**ANALYSIS**

The defendants seek summary judgment on several issues.  These issues include:

1) the plaintiffs' testimony is too speculative to support an overtime award;

2) because the plaintiffs received a daily salary, the plaintiffs' damages must be calculated at a half-time rate;

3) two of the plaintiffs, Elder Leopoldo Garcia Robles, and Jairo Ovidio Garcia Robles, are not entitled to recover any overtime pay for the time periods when they did not work for the defendants;

4) the value of the meals that the defendants purchased and provided to the plaintiffs entitle the defendants to a set-off;

5) no award of overtime wages shall be made to the plaintiff, Fredy Otoniel Valladares Lopez a/k/a Alexandro Barrios, for any overtime claimed prior to May 20, 2014.

*See* Defendants' Memorandum of Law Supporting their Motion for Summary Judgment (DE# 29, 12/6/16).

## I. Speculative Testimony

The defendants assert that the plaintiffs' testimony is too speculative to support and overtime award.  The defendants indicate that they scheduled the plaintiffs so that they did not work overtime and that the plaintiffs claim that they worked 60 hours a week is not based on any reasonable recollection.  Motion at p. 3.  Moreover, the

defendants assert that the amount of total hours each of the plaintiffs assert they

worked are merely rank speculation when one considers the dates the plaintiffs indicate

they actually worked for the defendants.

In support of their assertion regarding speculation, the defendants rely on

*Cordoba v. Dillard's Inc.*, 419 F.3d 1169 (11th Cir. 2005), which stated

> As the Seventh Circuit explained in this context,
> "unsupported speculation ... does not meet a party's burden
> of producing some defense to a summary judgment motion,
> Speculation does not create a genuine issue of fact; instead,
> it creates a false issue, that demolition of which is a primary
> goal of summary judgment." *Hedberg v. Ind. Bell Tel. Co.*,
> 47 F.3d 928, 931-32 (7th Cir. 1995).

*Cordoba*, 419 F.3d at 1181.  The defendants assert that the plaintiffs need more than

speculation to proceed with their case.  In support of this notion, the defendants rely on

*Gilson v. Indaglo, Inc.*, 581 Fed. Appx. 832 (11th Cir. 2014), which indicated that

> [e]ven assuming Appellants triggered the FLSA's burden-
> shifting analysis, Appellants failed to introduce sufficient
> evidence supporting a "just and reasonable inference,"
> *Allen*, 495 F.3d at 1316, that they were compensated below
> the minimum wage.  For instance, though Appellants
> testified they sometimes worked through automatically
> deducted lunch breaks, Appellants did not estimate the
> number of days on which they did not take a lunch.
> Similarly, Hinz testified he worked 52-54 hours per week and
> Gilson testified he worked 50-60 hours per week, but neither
> could recall the hours worked in any particular week.  On
> this record, no reasonable juror could make a just and
> reasonable approximation of Appellants' undercompensated
> work hours.

*Gilson v. Indaglo, Inc.*, 581 Fed. Appx at 833-34.  The defendants further assert that the

7

plaintiffs' claims suffer shortcomings similar to those of the plaintiff in *Jackson v. Corr. Corp. Of Am.*, 606 Fed. Appx. 945 (11th Cir. 2015) which indicated that the plaintiff "never stated with any clarity or precision the number of hours she allegedly worked, the amount or nature of that work, where or when the work was completed, or anything else that would assist a factfinder in approximating Jackson's unpaid overtime." *Jackson v. Corr. Corp. Of Am.*, 606 Fed. Appx. at 952.

However, under *Anderson v. Mt. Clements Pottery*, 328 US 680 (1946), the burden is on the defendant to keep accurate and complete time records, and there are very specific records that are required.   *Anderson v. Mt. Clements Pottery*, 320 US at 687.  The *Anderson* Court noted that

> where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes a more difficult problem arises. The solution, however, is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the Fair Labor Standards Act. In such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

8

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88, (1946) (*superseded by statute on other grounds*, 29 U.S.C. § 254(a)).

The facts in this case reflect that although the defendants claim to have time records reflecting the work hours of the plaintiffs that they kept for a three year period, the plaintiffs claim they were unaware of those records and did not see those records until after this lawsuit was filed. The facts in this matter also reflect that although the defendants claim that they paid the plaintiffs a daily rate, the payment records appear to indicate that the plaintiffs were paid partially by paycheck at a rate of $20.00 per hour and partially by checks made out to cash. Moreover, while the plaintiffs recollection of the actual hours they worked for the defendants may not be wholly accurate, the plaintiffs have somewhat of a recollection of the time periods they worked for the defendants and their job duties during their time of employment.

All of the aforementioned issues raise a genuine issue of material fact that is for the jury to decide and the undersigned recommends against granting summary judgment on this issue.

**II. Half-Time Rate**

The defendants indicate that they paid the plaintiffs a day rate and that the day rate for each of the plaintiffs varied and increased over time. Motion at p. 8. The defendants further indicate that they paid the plaintiffs the day rate in two separate checks, the sum of which totaled the number of days each of the plaintiffs worked at each of the plaintiffs day rates. Motion at p. 8. The plaintiffs indicate that they each received two checks, one indicating an hourly rate of $20.00 per hour and one made

out to cash.  Affidavit of Elder Leopoldo Garcia Robles at ¶5, Affidavit of Jairo Ovidio

Garcia Robles at ¶5, and Affidavit of Fredy Otoniel Valladares Lopez a/k/a Alexandro

Barrios at ¶5.  The defendants indicate that the two checks received by the plaintiffs

add up to the day rate of each plaintiff times the number of days worked on a given

week.  Motion at p. 8.

"The FLSA mandates overtime payment for non-exempt employees for hours

worked over 40 in a workweek at a rate of one and one-half times the regular rate at

which the employee is paid." *West v. Verizon Servs. Corp.*, No. 8:08-cv-1325-T-33MAP,

2011 WL 208314, at *10 (M.D. Fla. Jan. 21, 2011) (citing 29 U.S.C. § 207(a)(1)).

However, some courts have stated that "a non-exempt employee who receives a

weekly salary for all hours worked has, by definition, already been paid his 'regular rate'

for all hours worked in the workweek. Thus, a salaried employee is only owed half-time

for any hours worked in excess of forty [hours] per workweek." *Torres v. Bacardi Global

Brands Promotions, Inc.*, 482 F. Supp. 2d 1379, 1381 (S.D. Fla. 2007); *see also

Anderson v. Stiefel Aluminum Inc.*, No. 8:12-cv-1756-T-30MAP, 2013 WL 3714089, at

*2, n. 1 (M.D. Fla. July 15, 2013) (stating that "[t]he law is clear that the half-time

method applies when the employee's salary was intended to compensate the employee

for all the hours he worked.").

In *Torres*, this Court granted summary judgment for the defendants on this issue

reasoning that the plaintiff:

> was paid a fixed salary that he received no matter how many hours he
> worked in a given week. Therefore, if [the plaintiff] is rendered to be a
> non-exempt employee, his overtime must be computed by (1) dividing his
> weekly salary by the total number of hours worked in each given week (his

"regular rate"), and then (2) after determining his regular rate for a given week, [the plaintiff's] overtime damages would be one-half his regular rate multiplied by the number of overtime hours worked in that week.

*Id.* at 1381.

The *Torres* case relied on the Fifth Circuit's decision in *Blackmon v. Brookshire Grocery Co.*, 835 F.2d 1135 (5th Cir. 1988). In *Blackmon*, the Fifth Circuit concluded that the district court had miscalculated the plaintiff's award of damages when it awarded the plaintiff time-and-a-half because "[t]hat method [wa]s inappropriate when the employer and employee **have agreed** on a fixed salary for varying hours." *Id.* at 1138 (emphasis added). Moreover, there is a split among the courts concerning the appropriate method of calculating overtime compensation for fixed salary, non-exempt employees. *See e.g., Ramirez v. Urban Outfitters, Inc.,* No. 6:13-cv-1074-Orl-22GJK, 2014 WL 4090546, at *6 (M.D. Fla. Aug. 15, 2014) (on a motion to dismiss, recognizing that "[t]he Eleventh Circuit has not directly addressed the issue, but the other circuits are split as to whether the appropriate method for calculating unpaid overtime wages in a misclassification case is the half-time method."); *O'Neill v. Mermaid Touring Inc.*, 968 F. Supp. 2d 572, 587 (S.D.N.Y. 2013) (recognizing "the split of opinion in the federal courts . . . as to the proper measure of overtime damages for a misclassified employee.").

The defendants argue that because they paid the plaintiffs a day rate, any overtime owed to the plaintiffs should be calculated at a half-time basis.  In support of this contention, the defendants cite to 29 C.F.R.  §778.112.  29 C.F.R. §778.112 says

> [i]f the employee is paid a flat sum for a day's work or for doing a particular job, without regard to the number of hours

> worked in the day or at the job, and if he receives no other
> form of compensation for services, his regular rate is
> determined by totaling all the sums received at such day
> rates or job rates in the workweek and dividing by the total
> hours actually worked. He is then entitled to extra half-time
> pay at this rate for all hours worked in excess of 40 in the
> workweek.

29 C.F.R. § 778.112. In *Powell v. Carey Intern., Inc.*, 514 F.Supp. 2d 1302 (S.D. 2007),

this Court indicated that

> under § 778.112, the Regular Rate is determined by taking
> an employee's Weekly Pay and dividing it by the total hours
> that he actually worked. The employee's overtime hourly
> wage is then *half* of the Regular Rate.

*Powell v. Carey Int'l, Inc.*, 514 F. Supp. 2d at 1312.  The defendants argue that in order

to calculate overtime at a half-time rate

> [a]ll that is required is that employee be, in fact, paid a day-
> rate. *Dufrene v. Browning–Ferris, Inc.*, 207 F.3d 264 (5th
> Cir.2000).

*Hartsell v. Dr. Pepper Bottling Co. of Texas*, 207 F.3d 269, 273 (5th Cir. 2000).  In

support of their contention that use of a half-time rate is appropriate in this matter, the

defendants contend that even though some checks paid to the plaintiffs reflect a pay

rate of $20.00 per hour, the plaintiffs were paid a day rate and admit to same.  Motion

at p. 9.

        In contrast, the plaintiffs argue that they possess pay stubs reflecting a pay rate

of $20.00 per hour and that their rights to overtime wages may not be waived or

abridged.  The United States Supreme Court noted that

> [t]his Court's decisions interpreting the FLSA have frequently
> emphasized the nonwaivable nature of an individual

> employee's right to a minimum wage and to overtime pay
> under the Act. Thus, we have held that FLSA rights cannot
> be abridged by contract or otherwise waived because this
> would "nullify the purposes" of the statute and thwart the
> legislative policies it was designed to effectuate.

*Barrentine v. Arkansas Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981).  The

plaintiffs argue that under *Barrentine*, this Court "should not entertain any arguments by

Defendants that Plaintiffs cannot seek damages for time-and-a-half overtime violations

based on their very own paystubs".  Response at p. 9.  The plaintiffs further note that

the

> Defendants' method of pay demonstrates that Plaintiffs were
> paid $20/hr. and that same was intended to pay no more
> than at most 15 hours per week, in direct conflict with
> Defendants' contentions that Plaintiffs' damages should be
> calculated on a half-time basis; there is a genuine issue of
> material fact regarding these allegations.  *See, Martin v. S.
> Premier Contractors, Inc.*, 2013 WL 822635, at *9 (N.D. Ga.
> 3/6/13) ("An employee's regular rate of pay is a question of
> fact.").  As such, Plaintiffs should be entitled to present to a
> Jury all the facts in evidence, including their paystubs
> reflecting an hourly rate of $20, for the Jury to determine
> whether Defendants intended to compensate Plaintiffs at
> said rate and for the number of hours reflected on Plaintiffs'
> paystubs. Plaintiffs have reserved this right throughout the
> litigation and do so as well herein.

Response at pp. 9-10.

In this matter, the plaintiffs were partially compensated for their work performed

for the defendants by paychecks that reflect an hourly rate of $20.00 per hour.  The

existence of these paychecks raises a genuine issue of material fact as to method of

compensation for any overtime worked by the plaintiffs.  The undersigned finds that

because paychecks reflecting a pay rate of $20.00 per hour exist in this case, how the

plaintiffs were paid and the method of compensation used to pay the plaintiffs are issues of fact for the jury.  The undersigned recommends that summary judgment not be granted on this issue.

### III. Robles Brothers Overtime During Time Period Not Working for the Defendants

The defendants assert that the Robles brothers cannot recover overtime wages for days for which they did not work for the defendants.  Motion at p. 10.  The defendants claim that the Robles brothers did not work for the defendants for 16 weeks, from February 26, 2015, until June 16, 2015.  Motion at p. 10.  Specifically, the defendants argue that

> [t]he record evidence in this case establishes that Jairo Robles started working for Defendants on May 22, 2014, and that Elder Robles started working for Defendants on September 8, 2014. (Facts 53-54; 62, 63, 68, 69.) Defendants' records and recollections establish Elder Robles and Jairo Robles took a hiatus from working for Defendants for about 16 weeks, from February 26, 2015 to June 16, 2015.  (Facts 53-77.)....Defendants identified the pay they issued to Plaintiffs, and they did not issue any paychecks to the Robles brothers February 26, 2015, to June 15, 2015.

Motion at p. 10.

The defendants further assert that "the Robles brothers agreed to rely on Defendants' records for the dates that they have worked".  Motion at p. 10.

The plaintiffs assert that Jairo Ovidio Garcia Robles worked for the defendants from on or about July 10, 2002, through on or about December 2006, from on or about January 2008 through on or about December 2009, and from on or about January 2012 through on or about May 2016.  See Affidavit of Jairo Ovidio Garcia Robles (DE # 38-4 at ¶19).   The plaintiffs further assert that Elder Leopoldo Garcia Robles began working

14

for the defendants on or about May 1, 2014.  <u>See</u> Interrogatory responses (DE # 38-6 p. 6).  The plaintiffs also maintain that Elder Leopoldo Garcia Robles worked for the defendants until approximately May 6, 2016.  <u>See</u> Complaint (DE # 1, 5/20/16) at ¶17.

In his deposition, when asked if he started working for the defendants in September 2014, Elder Robles stated that "[w]hat I remember is that I started in May." Elder Robles deposition, p. 30, lines 13-14.  In Jairo Robles deposition, Jairo Robles indicated that he began working for the defendants about 8 to 10 years prior and that he left and came back a couple of times.  Jairo Robles deposition p. 52, lines 2-12.

The defendants assert that the

> Plaintiffs offer no facts from which the Court could conclude that Defendants did not maintain accurate records of the dates on which Plaintiffs worked or to create a question of fact concerning their days worked.  Plaintiffs merely point to testimony that they "did not know" that Defendants documented their days worked and disagreed with the dates on the documents generated when Plaintiffs started working without more.

Reply at p. 6.   The defendants argue that plaintiffs do not offer anything concrete as to the defendants' records and that does not create an issue of fact for trial.  In support of this notion, the defendants cite to *Burros v. Waffle House, Inc.*, 99-7053-CIV, 2000 WL 35593211, at * 3 (S.D. Fla. Aug.  28, 2000), which states

> [t]o defeat a motion for summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue for trial. *See Evers v. GMC,* 770 F.2d 984, 986 (11th Cir.1985). "Once a party has made a showing that no material issues of fact are in dispute, *mere conjecture or speculation by the party resisting summary judgment does not provide a basis upon which to deny the motion." Quarles v. GMC,* 758 F.2d 839, 840 (2d Cir.1985) (emphasis added). The plaintiff must present the court with more than mere

> "suspicions, which do not create ... triable issue[s] of fact."
> *Williams v. Harco Drugs, Inc.,* 896 F.Supp. 1150, 1154
> (S.D.Ala.1994), *aff'd by,* 107 F.3d 25 (11th Cir.1997).
> [*Emphasis in original*].

*Burrows v. Waffle House, Inc.*, No. 99 7053 CIV, 2000 WL 35593211, at *3 (S.D. Fla.

Aug. 28, 2000).

In this matter, in their affidavits, interrogatory responses, and in the Complaint,

the plaintiffs presented more than just suspicions to the Court regarding the dates they

worked for the defendants.  The undersigned finds that there exists a genuine issue of

material fact as to the dates the Robles brothers worked for the defendants, and the

issue is proper for presentation to the jury at trial.  The undersigned recommends that

summary judgment not be granted on this issue.

## IV. Lunch Set-Off

The defendants claim that they are entitled to a set-off of any overtime owed to

the plaintiffs, because the defendants provided lunches to the plaintiffs and paid for

those lunches.  In support of this notion, the defendants quote *Donovan v. New*

*Floridian Hotel, Inc.*, 676 F.2d 468, which says that

> [w]hen calculating the amount of back wages due to an
> employee under the FLSA, therefore, the employer is
> entitled to a credit for the reasonable cost of providing the
> meals and lodging.

*Donovan v. New Floridian Hotel, Inc.*, 676 F.2d at 473–74.

The defendants argue that

> [t]he record is undisputed that Defendants bought lunches
> for Plaintiffs.  (Facts 78-83.)  Plaintiffs further agreed in

16

> deposition that Defendants are entitled to a credit for the
> value of the meals that Defendants purchased for them.
> (Facts 78-83.)  Thus, the only issue that should be submitted
> to the jury is the *amount* of the credit to which Defendants
> are entitled as a result of buying lunches for Plaintiffs,
> considering that there is disputed evidence about how many
> days per week Defendants would pay for Plaintiff's (sic)
> lunches.

Motion at p. 11-12.

The plaintiffs assert that the Court should reject the defendants arguments

regarding a meal set-off for the lunches the defendants allegedly provided to the

plaintiffs.

> "Wage" paid to any employee includes the reasonable cost,
> as determined by the Administrator, to the employer of
> furnishing such employee with board, lodging, or other
> facilities, if such board, lodging, or other facilities are
> customarily furnished by such employer to his employees:
> *Provided*, That the cost of board, lodging, or other facilities
> shall not be included as a part of the wage paid to any
> employee to the extent it is excluded therefrom under the
> terms of a bona fide collective-bargaining agreement
> applicable to the particular employee: *Provided further*, That
> the Secretary is authorized to determine the fair value of
> such board, lodging, or other facilities for defined classes of
> employees and in defined areas, based on average cost to
> the employer or to groups of employers similarly situated, or
> average value to groups of employees, or other appropriate
> measures of fair value. Such evaluations, where applicable
> and pertinent, shall be used in lieu of actual measure of cost
> in determining the wage paid to any employee.

29 U.S.C.A. § 203(m).

The plaintiffs maintain that the defendants did not contact the Department of Labor to

determine if the manner in which the defendants paid the plaintiffs complied with the

overtime wage laws. Response at p. 12. The plaintiffs further note that the

> [d]efendants never communicated with the Department of
> Labor regarding Plaintiffs' board/alleged meals and Plaintiffs
> were never given the option of receiving additional pay in
> lieu of receiving their alleged lunches and Plaintiffs were
> never told that the alleged lunches wold be part of their pay.

Response at p. 12, citing Depo. Trans. Defendant Pedro P. 37, L.19-23; P. 38, L.11-14;

Depo Trans. Defendant Octavio P. 9, L. 23-25; P. 10, L. 5-7; P. 17, L. 17-21.  The

plaintiffs further assert that the defendants never obtained any authorization or a

determination from anyone at the Department of Labor regarding the meal credits the

defendants seek regarding the plaintiffs' wages.  Response at p. 12.  In deposition,

Jairo Robles indicated that the defendants did not provide lunch on a daily basis and

the defendants did not pay for his lunch when he paid out the money for lunch himself.

Jairo Robles deposition, p. 84 lines 2-13.  Likewise, Fredy Otoniel Valladares Lopez

a/k/a Alexandro Barrios indicated in deposition that the defendants did not provide

lunch on a daily basis.  Fredy Otoniel Valladares Lopez a/k/a Alexandro Barrios

deposition, p. 62, lines 10-11 and 17-20.

Section 3(m) of the FLSA provides for requests by employers for the

determination of a reasonable cost by the Administrator.  The burden is on the

employer to invoke the Administrator's assistance.  *Donovan v. New Floridian Hotel,*

*Inc.*, 676 F.2d at 475.  In order to claim a cost credit for the lunches, the defendants

must maintain records of the actual cost of the lunches and how it is applied to the

wages earned by the plaintiffs.

> The regulations require employers to keep certain records of
> the cost incurred in furnishing board, lodging or other
> facilities, id. s 516.27(a), and also require the employer to
> maintain records showing additions or deductions from

wages paid for board, lodging or other facilities on a work
week basis. Id. s 516.28(b).

*Donovan v. New Floridian Hotel, Inc.*, 676 F.2d at 474.  The plaintiffs argue that they

were never given the opportunity to decide if they wished to receive the alleged lunches

that they received in lieu of monetary wages.  The defendants do not know the exact

amount of value of the lunches they allegedly provided to the plaintiffs.  The defendants

only kept records of lunches charged on credit card receipts, not lunches paid for in

cash, and averaged the amount paid to determine the costs of the lunches attributable

to each plaintiff.  Deposition of Octavio Acebo, pp. 9-15.

Moreover, in *Marshall v. New Floridian Hotel, Inc.*, No. 77 1028 CIV, 1979 WL

1991 (S.D. Fla. Aug. 29, 1979), the Court noted that the

> [d]efendants have failed to provide their employees with an
> option to receive in cash the amounts attributed and claimed
> as a credit by defendants for meals, lodging or other
> facilities prior to the employees' acceptance thereof and
> prior to deductions being taken or claimed by defendants
> from the wages paid such employees. Absent the aforesaid
> option, an employee's acceptance of such meals, lodging or
> other facilities is not voluntary and uncoerced and thus such
> may not be considered "furnished" under Section 3(m) of the
> Act as part of wages paid the employee in accordance with
> 29 CFR 531.30.

*Marshall v. New Floridian Hotel, Inc.*, No. 77 1028 CIV, 1979 WL 1991, at *11.

Based on the law cited above, the defendants method of record keeping and

determining the amount paid for lunches for each individual plaintiff is inappropriate.

There is no way to determine the reasonable costs to be applied to a reduction in the

wages of each individual plaintiff.  Moreover, the plaintiffs were not given an option to

19

take the lunches as part of their wages in lieu of monetary compensation.  The

undersigned finds that because the defendants' records are inadequate as required by

the law, and because the plaintiffs were not offered the option of whether they wished

to receive lunches or monetary compensation, a genuine issue of material fact exists

for the jury's determination.  The undersigned recommends that summary judgment not

be granted on this issue.

## V. Lopez Overtime Prior to May 20, 2014

The defendants argue that because Fredy Otoniel Valladares Lopez a/k/a

Alexandro Barrios indicated at deposition that he thought the defendants were unaware

of the overtime he worked, he may not recover three years of overtime and that his

claim for overtime wages is limited to two years.  Motion at p. 12.  In support of this

notion, the defendants cite to *Alvarez Perez v. Sanford Orlando Kennel Club, Inc.*, 515

F.3d 1150 (11th Cir. 2008) which indicated that in order

> [t]o establish that the violation of the Act was willful in order
> to extend the limitations period, the employee must prove by
> a preponderance of the evidence that his employer either
> knew that its conduct was prohibited by the statute or
> showed reckless disregard about whether it was.
> *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133, 108
> S.Ct. 1677, 1681, 100 L.Ed.2d 115 (1988).

*Alvarez Perez v. Sanford Orlando Kennel Club, Inc.*, 515 F.3d at 1162–63.  The

defendants assert that based on the testimony of Fredy Otoniel Valladares Lopez a/k/a

Alexandro Barrios that he did not think the defendants knew when he left work together

with his testimony that the failure of the defendants to pay him overtime was an

accident, their actions do not rise to the necessary level of reckless disregard, and the

overtime claim of Fredy Otoniel Valladares Lopez a/k/a Alexandro Barrios is precluded for the time period prior to May 20, 2014.  Motion at p. 12-13.

The plaintiffs argue that the defendants willfully and intentionally refused to pay overtime due to Fredy Otoniel Valladares Lopez a/k/a Alexandro Barrios, and his recovery should, therefore, extend into the third year for which he is claiming he is owed overtime pay.  The plaintiff, Fredy Otoniel Valladares Lopez a/k/a Alexandro Barrios, claims he is owed overtime dating back three years from the date of filing of the lawsuit, and the plaintiffs argue that issues relating to the knowledge of the employer are questions for the jury.  Response at p. 17.  In support of this notion, the plaintiffs rely on *Morrison v. Quality Transports Servs., Inc.*, 474 F. Supp. 2d 1303  (S.D. Fla. 2007) which says that

> [t]he issue of willfulness under § 255(a) is a question of fact for the jury not appropriate for summary disposition. *Soto v. McLean,* 20 F.Supp.2d 901, 913 (citing *Fowler v. Land Mgmt. Groupe, Inc.,* 978 F.2d 158, 162–63 (4th Cir.1992)) (holding in the context of § 255(a), "there is no reason issues of willfulness should be treated any different from other factual determinations relating to application of a statute of limitations that are routinely submitted to the jury."); *see also Pabst v. Oklahoma Gas & Elec. Co.,* 228 F.3d 1128, 1137 (10th Cir.2000); *McGuire v. Hillsborough County, FL,* 2007 WL 141129, *7 (M.D.Fla. Jan.17, 2007) ("whether a defendant committed a willful violation is a jury question"); *Acosta Colon v. Wyeth Pharm. Co.,* 363 F.Supp.2d 24, 29–30 (D.P.R.2005).

*Morrison v. Quality Transports Servs., Inc.*, 474 F. Supp. 2d at 1313.

Fredy Otoniel Valladares Lopez a/k/a Alexandro Barrios verbally complained to Manuel Flores, the defendants' foreman, regarding the number of hours he was

required to work daily, and the rate of pay which he received.  Mr. Flores told Fredy

Otoniel Valladares Lopez a/k/a Alexandro Barrios that he did not have a choice and that

he had to work.  *See* Response by Fredy Otoniel Valladares Lopez a/k/a Alexandro

Barrios to Interrogatory number 5.  The plaintiffs argue that the complaints of Fredy

Otoniel Valladares Lopez a/k/a Alexandro Barrios to Mr. Lopez may be imputed to the

defendants.  Response at p. 18.  Fredy Otoniel Valladares Lopez a/k/a Alexandro

Barrios was not the only employee complaining about his work rate and work hours.

Response at p. 18.  In their responses to the defendants' interrogatories, both of the

other plaintiffs indicate that they complained to Mr. Flores regarding their rate of pay

and the hours they worked.  Response at p. 19.  The plaintiffs argue that, as a result of

the complaints, the defendants were on notice their employees worked overtime.

Response at p. 18.  The plaintiffs, therefore, assert that

> [s]uch allegations clearly raise a question of material fact as
> to whether Defendants either had knowledge of overtime
> hours being worked or else had the opportunity through
> reasonable diligence to acquire knowledge.  Such
> allegations are questions of fact for the Jury, which needs to
> determine whether Defendants and their agents actions (or
> inactions) imputed knowledge to Defendants.  *See e.g.*
> *Bailey v. TitleMax of Georgia, Inc.*, 776 F.3d 797, 804 (11th
> Cir. 2015).

Response at pp. 18-19.

After reviewing the evidence submitted by the parties, the undersigned

concludes that genuine issues of material fact exist as to the willfulness of the

defendants failure to pay overtime wages, which should be determined as a fact

question by the jury.  Accordingly, the undersigned recommends the Court not grant

summary judgment on this issue.

**<u>RECOMMENDATION</u>**

In accordance with the foregoing, the undersigned respectfully recommends that the Defendants' Memorandum of Law Supporting their Motion for Summary Judgment (DE # 29, 12/6/16) be **DENIED**.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Cecilia M. Altonaga, United States District Judge. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. See 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (1989); 11th Cir. R. 3-1 (2016).

RESPECTFULLY SUBMITTED at the United States Courthouse, Miami, Florida this 7th day of March, 2017.

JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
United States District Judge Moreno
All Counsel of Record